IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


REBECCA A. PEREIRA                                                                      PLAINTIFF

vs.                                        Civil No. 6:06-CV-06066

MICHAEL J. ASTRUE[1]                                                                  DEFENDANT
Commissioner, Social Security Administration


**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Rebecca A. Pereira ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the

Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final

decision of the Commissioner of the Social Security Administration ("SSA") denying her application

for Disability Insurance Benefits ("DIB") under Title II of the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Robert T.

Dawson referred this case to the Honorable Barry A. Bryant for the purpose of making a report and

recommendation.    The Court, having reviewed the entire transcript and relevant briefing,

recommends that the ALJ's determination be **AFFIRMED.**

**1.** **Background:**

Plaintiff filed her application for DIB on May 30, 2003. (Tr. 53-55).[2] In this application and

in other documents filed with the SSA, Plaintiff alleges she is disabled because she suffers from

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

depression, anxiety, "systemic yeast problems," high blood pressure, and fibromyalgia. (Tr. 95). Plaintiff claims these injuries or conditions first began to bother her in 1983 or 1984 and that they first caused her to be unable to work on June 30, 1994. *See id.* For the purposes of Plaintiff's DIB application, Plaintiff's date last insured was June 30, 2002.[3] (Tr. 15, 56, 428-429).

Plaintiff's application was initially denied on September 15, 2003 and was denied again on reconsideration on January 12, 2005. (Tr. 31-38). Plaintiff requested an administrative hearing which was held on January 26, 2006 in Hot Springs, Arkansas. (Tr. 426-448). Plaintiff was present and was represented by an attorney, Phillis Lemons,[4] at the hearing. *See id.* Plaintiff, Tony Pereira (Plaintiff's husband), Dixie Edmondson (Plaintiff's friend), and Vocational Expert ("VE") Dwight Turner testified at this hearing. *See id.*

On May 24, 2006, the Administrative Law Judge ("ALJ") issued a written opinion. (Tr. 426-448). The ALJ found that Plaintiff met the disability insured status requirements of the Act through June 30, 2002, her date last insured. (Tr. 17, Finding 1). The ALJ found that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to the ALJ's decision. (Tr. 17, Finding 2). The ALJ found that Plaintiff had "symptoms of depression and/or anxiety with symptoms of sleep disturbance; a history of hypertension with indication of coronary artery disease and a history of morbid obesity (300+ pounds; 64 inches tall), with arthralgias and/or symptoms of fibromyalgia," which the ALJ determined were severe impairments. (Tr. 17, Finding 3). The ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or

---

[3] The SSA's initial denial and denial on reconsideration state that Plaintiff's date last insured was March 31, 2002. (Tr. 31, 33). This finding is inconsistent with the ALJ's finding that Plaintiff's date last insured was June 30, 2002. This Court notes that ALJ's finding regarding Plaintiff's date last insured is entitled to deference, and this Court will use this date–June 30, 2002–as the date Plaintiff was last insured.

[4] Plaintiff is represented by Terry P. Diggs on this appeal. (Doc. No. 1).

medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 ("Listings").  (Tr. 17, Finding 4).

The ALJ found that, on her date last insured, Plaintiff was forty-nine (49) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2007).  (Tr. 24, Finding 7).  At the time of the hearing, Plaintiff resided in Malvern, Arkansas with her spouse.  (Tr. 430).  The ALJ found that, at the time of the hearing, Plaintiff had at least a high school education and was able to communicate in English.  (Tr. 24, Finding 8).  Furthermore, the ALJ found that the transferability of Plaintiff's job skills, if any, was not material to the determination of disability due to Plaintiff's age.  (Tr. 24, Finding 9).

In his written opinion, the ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC").  (Tr. 19-23, Finding 5).  First, the ALJ applied the five factors from 20 C.F.R. § 404.1529 and evaluated Plaintiff's subjective complaints.  (Tr. 19-23).  The ALJ determined, based upon his review of these factors, that Plaintiff's subjective complaints of pain were not fully credible.  (Tr. 21).  The ALJ discounted Plaintiff's subjective complaints largely based upon the following findings: (1) Plaintiff had the ability to, in general, independently maintain and/or attend to her personal care needs; (2) Plaintiff's treating physicians conservatively treated Plaintiff's severe impairments with routine follow-up care and prescription medications; and (3) Plaintiff's medical records from Community Counseling Services indicated that, at least from August 28, 2001 through May 20, 2002, Plaintiff only suffered from a slightly below average to a mild dysfunction due to her depression and anxiety.  (Tr. 19-23).  The ALJ found, based upon his credibility determination, that Plaintiff retains the RFC to perform the following:

> [L]ift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently .
> . . the ability to stand and/or walk about 6 hours in an 8-hour workday and the ability

to sit about 6 hours in an 8-hour workday. The claimant could occasionally climb, balance, stoop, kneel, crouch, and/or crawl and . . . would experience no other limitations associated with manipulative functioning, visual functioning, communicative functioning, or environmental limitations. In giving specific consideration to the claimant's history of depression and/or anxiety as these conditions existed on or before the expiration of insured status . . . Ms. Pereira would have been limited to a work environment where interpersonal contact is routine, but superficial in nature; where the complexity of the required tasks is learned by experience, involving some variables, but requiring little supervision for routine tasks and more detailed supervision for non-routine tasks.

(Tr. 19, Finding 5).

The ALJ also found, based upon this RFC determination, that Plaintiff was unable to perform her Past Relevant Work ("PRW"). (Tr. 23-24, Finding 6). The VE testified at the administrative hearing regarding this issue. (Tr. 445-446). The VE testified that Plaintiff's PRW included work as a cook/cashier and as a cleaner. (Tr. 445-446). The VE testified that a hypothetical person the same age as Plaintiff and with the same education, RFC, and work experience would not be able to perform Plaintiff's PRW. *See id.* Based upon the VE's testimony, the ALJ determined that Plaintiff could not perform her PRW. (Tr. 23-24, Finding 6).

Next, the ALJ determined whether Plaintiff would be able to perform work that exists in significant numbers in the national economy. (Tr. 24-25, Finding 10). The VE also testified at the administrative hearing regarding this issue. (Tr. 446-447). The VE testified that the same hypothetical person listed above would be able to perform work as a hotel cleaner (over 10,000 such jobs in the State of Arkansas and over 880,000 such jobs in the nation) or as an assembly worker (over 20,000 such jobs in the State of Arkansas and over 1,000,000 such jobs in the nation). (Tr. 446-447). Both jobs are light and unskilled. (Tr. 24). Based upon this testimony, the ALJ determined Plaintiff was not disabled. (Tr. 24-25, Finding 10)

On July 11, 2006, Plaintiff requested that the Appeals Council review the ALJ's May 24,

4

2006 hearing decision.  (Tr. 9-10).  The Appeals Council declined to review this decision on September 27, 2006, and the ALJ's disability determination became the final decision of this case.  *See id.*  Subsequently, Plaintiff filed the present action.  (Doc. No. 1).  This case was referred to the undersigned on February 20, 2007.  Plaintiff and Defendant have both filed appeal briefs.  (Doc. Nos. 8, 11).  This case is now ready for decision.

## 2. **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. § 405(g) (2006);  *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently.  *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998);  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines

5

a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

## 3. <u>Discussion:</u>

Plaintiff raises three points in this appeal. Specifically, Plaintiff claims (A) the ALJ erred in ruling that Plaintiff's depression failed to meet or equal the listed impairments of the Regulations; (B) the ALJ failed to properly consider Plaintiff's morbid obesity; and (C) the ALJ erred in concluding that Plaintiff could perform work at a full-time job. (Doc. No. 8, Pages 9-13). In response, Defendant argues that Plaintiff failed to satisfy her burden of showing she had an

impairment or a combination of impairments that met or equaled a listed impairment. (Doc. No. 11, Pages 12-18). Defendant also argues that the ALJ's RFC and the ALJ's Step 5 determinations are supported by substantial evidence in the record and should be affirmed. (Doc. No. 11, Pages 4-12). This Court will address each of Plaintiff's arguments in order.

As an initial matter, the relevant time period for a DIB application is from the alleged onset date to the date the claimant was last insured. *See Pyland v. Apfel,* 149 F.3d 873, 876-77 (8th Cir. 1998). In the present action, the relevant time period for the purposes of Plaintiff's DIB application is from Plaintiff's alleged onset date or June 30, 1994 to the date Plaintiff was last insured or June 30, 2002.[5] (Tr. 17, Finding 1, 95).

### A. Listings of Impairments – Listing 12.04 (Affective Disorders)

Plaintiff claims that she met the requirements of the Listing 12.04 during the relevant time period due to her depression and anxiety.[6] (Doc. No. 8, Pages 9-11). Plaintiff claims that she has suffered from depression and anxiety since February of 1985 and that she continued to have problems with depression at varying levels right up through her date last insured. *See id.* Specifically, Plaintiff claims she met the requirements of Listing 12.04 during the relevant time period because she had anhedonia, appetite disturbance and weight gain, decreased energy, and thoughts of suicide. (Doc. No. 8, Page 10). In response, Defendant argues that Plaintiff did not meet all the requirements of Listing 12.04 during the relevant time period. (Doc. No. 11, Pages 12-18).

---

[5] Plaintiff does not dispute the fact that she must prove her disability by her date last insured or by June 30, 2002. (Doc. No. 8, Page 1).

[6] Plaintiff also quotes Listing 12.07, the listing for Somatoform Disorders, in support of her argument that she suffers from severe anxiety coupled with severe depression. (Doc. No. 8, Page 10-11). Plaintiff, however, does not claim that she meets the requirements of Listing 12.07; and therefore, this Court will not address Listing 12.07. *See id.* ("While the claimant *may not meet this standard* [Listing 12.07] *on its face,* her symptoms certainly add a major limitation to one already present by virtue of her major depression.").

7

Defendant argues that Plaintiff only provided evidence indicating she met *part* of the requirements of Listing 12.04 and did not provide evidence indicating that she met *all* the requirements of Listing 12.04.  *See id.*  Defendant notes that Plaintiff has the burden of establishing that she met all the requirements of Listing 12.04 during the relevant time period.  *See id.* Defendant claims that Plaintiff has not met her burden in this case and should not be found to be disabled.  *See id.*

To meet the requirements of Listing 12.04, a claimant must prove that he or she suffers from "a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.  In order to establish that he or she meets this standard, a claimant must either meet the requirements of both Parts A and B or meet the requirements of just Part C[7]:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements of C are satisfied.
> A. Medically documented persistence, either continuous or intermittent, of *one* of the following:
> 1. Depressive syndrome characterized by at least *four* of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Pyschomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking . . .
> AND
> B. Resulting in at least *two* of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration . . .

*Id.* (emphasis added).

---

[7] Because Plaintiff does not claim she meets the requirements of Part C, this Court will only address Parts A and B.

In the present action, Plaintiff only claims to have met the requirements of Part A, and Plaintiff did not indicate in her appeal brief which sections of Part B she met during the relevant time period. (Doc. No. 8, Page 10). According to the requirements of Listing 12.04, Plaintiff *is required* to meet both the requirements of Part A and Part B during the relevant time period in order to establish that she met Listing 12.04. Because Plaintiff has not indicated to this Court *how* she met the requirements of Part B during the relevant time period and has not provided the Court *with any evidence suggesting* that she met the requirements of Part B during the relevant time period, Plaintiff has not met her burden of establishing that she met the requirements of Listing 12.04 during the relevant time period. *See* 20 C.F.R. § 404.1520(a)(4).

Furthermore, even if Plaintiff had provided *some* references in the record to support her claim, Plaintiff still could not establish that she met the requirements of Listing 12.04 during the relevant time period because the record does not support such a finding. First, despite Plaintiff's claim that she has been suffering from severe depression since 1985, Plaintiff was still able to work from 1985 until 2002. (Tr. 96, 431-432). Her ability to work for seventeen years, despite an allegedly disabling mental impairment, severely undercuts her claim that she was unable to work during the relevant time period. *See Ostronski v. Chater,* 94 F.3d 413, 419 (8th Cir. 1996) (holding that the plaintiff's ability to work past her alleged onset date detracted from her claim that she was disabled).

Second, no treating or examining physician found that Plaintiff met all the requirements of Listing 12.04 during the relevant time period. (Tr. 19, 105-422). For instance, Dr. Nobles, a psychologist, examined Plaintiff on August 28, 2003 and did not note any marked limitations in Plaintiff's ability to perform daily activities; to maintain social functioning; or to maintain concentration, persistence, and pace. (Tr. 194-198). Dr. Nobles also did not find that Plaintiff

9

suffered from repeated episodes of decomposition.[8]  *See id.*  No other treating or examining physician noted that Plaintiff was markedly limited during the relevant time period in these areas or suffered from repeated episodes of decomposition. (Tr. 105-422).  Plaintiff is required to suffer from two of these four limitations in order to meet the requirements of Part B of Listing 12.04. Because Plaintiff cannot establish that she met the requirements of Part B during the relevant time period, Plaintiff cannot establish she met the requirements of Listing 12.04 during the relevant time period. Thus, the ALJ did not err in finding that Plaintiff did not meet the requirements of Listing 12.04 during the relevant time period.  (Tr. 18, Finding 4).

### B. Consideration of Plaintiff's Claimed Obesity

Plaintiff also claims the ALJ erred by failing to properly consider Plaintiff's obesity.  (Doc. No. 8, Pages 11-12).  Plaintiff claims the ALJ was required to discuss or state in his decision how Plaintiff's obesity may impact her ability to work.  *See id.*  Plaintiff cites Social Security Ruling ("SSR") 00-3p in support of her argument that the ALJ was required to fully consider and explain the impact Plaintiff's claimed obesity may have on her ability to work.  *See id.*  In response, Defendant argues that SSR 00-3p has been replaced by SSR 02-1p and argues that SSR 02-1p provides the correct standard for determining whether the ALJ properly considered Plaintiff's obesity.  (Doc. No. 11, Page 16).  Defendant argues that the ALJ properly considered Plaintiff's claimed obesity pursuant to the requirements of SSR 02-1p.  *See id.*  at 17.

---

[8] Plaintiff relies upon Dr. Nobles's report in support of her argument that she has significant limitations in adaptive functioning.  (Doc. No. 8, Page 8).  In her report, Dr. Nobles stated that she was "undecided" as to whether Plaintiff had two or more areas with significant limitations in adaptive functioning.  *See id.* ;(Tr. 197).  Dr. Nobles *did not say* that Plaintiff *was limited*, Dr. Nobles merely stated that she could not determine whether Plaintiff was limited.  Such evidence does not *support* Plaintiff's argument that she was limited in her adaptive functioning and certainly does provide sufficient evidence for Plaintiff to meet her burden of establishing that met the requirements of Listing 12.04 during the relevant time period.

SSR 02-1p is entitled "Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity" and provides the guidelines for determining whether a claimant's obesity is disabling.[9]  SSR 02-1p focuses upon how obesity may be disabling when considered singularly or in combination with other severe impairments. However, SSR 02-1p does not require the ALJ to explicitly discuss or explain his or her reasons for determining that a claimant's obesity is not disabling, as Plaintiff claims it does.  (Doc. No. 8, Pages 11-12)  SSR 02-1p only requires the ALJ to evaluate a claimant's obesity prior to making a disability determination.  *See also* 20 C.F.R. § 404.1523.

Furthermore, Plaintiff has not cited any authority in her appeal brief which would require the ALJ to provide his or her reasons for determining a claimant is not disabled due to a severe impairment (including obesity), and the Eighth Circuit does not require such a showing.  In the Eighth Circuit, the ALJ is not required to *explicitly* state or discuss in his or her opinion the reasons for finding that a claimant is not disabled due to a given impairment.  *See Hajek v. Shalala,* 30 F.3d 89,  92 (8th Cir. 1994).  Instead, an ALJ is only required to state that he or she has considered the claimant's severe impairment, both singularly and in combination, and found that the impairment was not disabling.  *See id.*  (holding that statements such as "the evidence *as a whole* does not show that the claimant's  *symptoms* . . . preclude his past work as a janitor" and "[t]he claimant's *impairments* do not prevent him from performing janitorial work . . ." sufficiently establish that the ALJ properly considered the plaintiff's impairments).

In the present action, the ALJ properly evaluated Plaintiff's claimed obesity at Steps 2, 3, and 4.  At Step 2, the ALJ determined that Plaintiff's claimed obesity qualified as a severe impairment.  (Tr. 17, Finding 3).  At Step 3, the ALJ explained the standard for considering Plaintiff's obesity and

---

[9] SSR 00-3p, which was cited by Plaintiff in her appeal brief, was superceded by SSR 02-1p on September 12, 2002.  67 Fed. Reg. 57859-57864 (September 12, 2002).

then applied that standard. *See id.* Specifically, he noted that he was required "under current regulatory guidelines" to give consideration "to the interaction between a claimant's obesity and other body system impairments." (Tr. 18). The ALJ noted, "the combined effects of obesity, when considered in conjunction with other body systems impairments, can be greater than the effects of each of the impairments when considered alone." *See id.* The ALJ also stated, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, consideration must be given to any additional and commutative effects of obesity." *See id.* Then, based upon this standard, the ALJ determined that none of Plaintiff's severe impairments, including Plaintiff's obesity, met the listing-level severity. *See id.*

At Step 4, the ALJ evaluated Plaintiff's RFC and determined that Plaintiff was able to perform only light work. (Tr. 19, Finding 5). This finding is consistent with a finding that Plaintiff is limited exertionally due to her obesity. *See* SSR 02-01p (noting that an "individual [with obesity] may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling"). In evaluating her RFC, the ALJ also found that Plaintiff was limited to occasional postural activities, such as climbing, balancing, stopping, kneeling, crouching, and/or crawling. (Tr. 19, Finding 5). This finding is also consistent with a finding that Plaintiff is limited due to her obesity. *See* SSR 02-01p (noting that an individual's obesity "may also affect [the individual's] ability to do postural functions, such as climbing, balance, stooping, and crouching").

As noted above, in the Eighth Circuit, the ALJ's statements in his opinion—that he had taken into consideration Plaintiff's obesity and had applied the correct standard for evaluating Plaintiff's obesity—are sufficient to establish that the ALJ properly considered Plaintiff's obesity, and the ALJ was not required to explicitly discuss his reasons for finding that Plaintiff's obesity was not disabling or did not meet listing-level severity. *See Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir. 1994).

12

Furthermore, the ALJ's Step 4 RFC determination is consistent with a finding that Plaintiff was limited in her ability to work due to her obesity and reflects the ALJ's consideration of Plaintiff's severe impairment of obesity.  (Tr. 19, Finding 5).

**C. ALJ's Residual Functional Capacity Determination**

Plaintiff also claims the ALJ erred in ruling that the claimant could perform work at a full-time job.  (Doc. No. 8, Pages 12-13).  Plaintiff claims she has severe mental and emotional limitations that include the following: "extreme crying spells" where she claims she cries for two to three hours a day, attempts at suicide, anxiety, inability to leave her house for four to five days a week, and inability to take care of her daily needs.  *See id.*  Plaintiff claims that these mental and emotional limitations are corroborated by medical records from Arkansas State Hospital, Community Counseling Services, and "the lengthy report of her personal physician, Dr. Burton, in Malvern." *See id.*  Plaintiff has not, however, provided this Court with *any specific references* to *any* medical records corroborating Plaintiff's claims.  Plaintiff merely asserts that evidence exists in those records that support her claims.  *See id.*

In response, Defendant argues that the ALJ's RFC determination is supported by substantial evidence in the record.  (Doc. No. 11, Pages 4-10).  Defendant argues that despite Plaintiff's claimed mental and emotional limitations, the record indicates that those limitations have been adequately treated with medical management.  *See id.* at 5.  Defendant also argues that, despite Plaintiff's claim, Dr. Burton's treatment records do not provide any restrictions on Plaintiff's ability to work continuously throughout the relevant time period.  *See id.* at 6.  Defendant also argues that no other physician placed any restrictions on Plaintiff's ability to work during the relevant time period and that because she has not established she was restricted in her ability to work, she was not disabled during the relevant time period.  *See id.*

13

### (1) ALJ's Credibility Determination

In determining a claimant's RFC, the ALJ is required to consider all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his or her limitations. *See McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). In assessing an individual's description of his or her limitations, the ALJ should first determine whether the individual's claimed limitations are fully credible; and in making this credibility determination, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.429. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007).

These factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). Furthermore, an ALJ's credibility determination is generally entitled to deference. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007). As long as the ALJ properly applies these five factors and gives several valid reasons for his or her finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

14

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ applied the five factors from 20 C.F.R. § 404.1529 and determined that Plaintiff's subjective complaints were not fully credible. (Tr. 19-23). The ALJ based this credibility determination upon (1) Plaintiff's ability to, in general, independently maintain and/or attend to her personal care needs; (2) Plaintiff's treating physician's conservative treatment of Plaintiff's severe impairments with routine follow-up care and prescription medications; and (3) Plaintiff's medical records from Community Counseling Services, which indicate that at least from August 28, 2001 through May 20, 2002, Plaintiff only suffered from a slightly below average to a mild dysfunction due to her depression and anxiety. (Tr. 19-23). The ALJ also based this credibility determination upon the fact that Plaintiff's medical records contained no evidence indicating that Plaintiff was ever advised that she was completely unable to engage in work activity as a result of any of her diagnosed conditions at any time during the relevant time period. (Tr. 23). This Court finds these reasons for discounting Plaintiff's subjective complaints are valid and are entitled to deference. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007). Therefore, this Court affirms the ALJ's credibility determination. *See id.*

### (2) ALJ's Review of Plaintiff's Medical Records

In addition to considering a claimant's subjective complaints, the ALJ should also base his

15

or her RFC determination upon a claimant's medical records.  *See McKinney,* 228 F.3d at 863.  In reviewing Plaintiff's medical records in this case, this Court finds it important to note that Plaintiff has provided no reference to medical records indicating that she is limited, in any way, in her ability to work.  Plaintiff merely asserts in her brief that her inability to work, and her claimed corresponding disability, are supported by records from Arkansas State Hospital, Community Counseling Services, and "the lengthy record of her personal physician, Dr. Burton, in Malvern" and that these opinions are entitled to "substantial weight."  (Doc. No. 8, Page 13).  Upon a review of the transcript in Plaintiff's case, this Court finds no such limitations in the medical records from the relevant time period.  (Tr. 110-186).

Instead, Plaintiff's medical records support the ALJ's RFC determination.  The medical records from Dr. Bruce Burton, Plaintiff's primary treating physician, indicate that Plaintiff's impairments were being treated with only routine follow-up care and prescription medications during the relevant time period.  (Tr.  110-146); *See Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001) (holding that the ALJ's credibility determination was supported by substantial evidence partly because the claimant's treating physician primarily prescribed conservative treatment).  The medical records also indicate that no physician reported that Plaintiff had a disabling condition or that she was totally unable to work during the relevant time period.  (Tr. 110-228); *See Fenton v . Apfel,* 149 F.3d 907, 912 (8th Cir. 1998) (holding that the ALJ's credibility determination was supported by substantial evidence partly because the claimant's physicians had placed no work restrictions on the claimant during the relevant time period).

The Community Counseling Services's "Intake Assessment and Relevant History" report dated August 2000 also supports the ALJ's RFC determination.  (Tr. 177-185).  This report states that Plaintiff's motor behavior was normal, Plaintiff was fully oriented, her thought processes were

16

logical/responsive, her thought content was appropriate, her memory was intact, her insight/judgment were within a normal range, and her intelligence was estimated at average.  (Tr. 178).  Finally, Dr. Robert E. Farrell's September 2000 report supports the ALJ's disability determination.  (Tr. 173-176).  Plaintiff reported to Dr. Farrell that she had numerous interests, including reading, softball, and swimming.  (Tr. 174).  Dr. Farrell noted that Plaintiff did not appear to be depressed, and Dr. Farrell did not "feel that her [Plaintiff's] overall energy level reflected depression or major depression."  *See id.*  Dr. Farrell also noted that Plaintiff's thought content was very coherent and that Plaintiff was "very easily understood" and "express[ed] herself extremely well."  *See id.*

In sum, these medical records provide substantial evidence to support the ALJ's RFC determination.  Accordingly, the ALJ's RFC determination should be affirmed.  *See* 42 U.S.C. § 405(g).

**4. Conclusion:**

Based upon the foregoing, I find that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence, and I recommend that the ALJ's decision be affirmed.

**The parties have ten (10) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.  See  Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).**

ENTERED this **18th day of September, 2007.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge

17